IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JESSE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:22-cv-357 (MTT) |
| | ) |
| ALLIANCE OUTDOOR PRODUCTS INC., *et al*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

The plaintiff, Jesse Jones, filed this products liability action against the defendants, Alliance Outdoor Products, Inc. ("AOP") and its parent company, Alliance Outdoor Group, Inc. ("AOG"), alleging that they are liable for injuries he sustained while using AOP's 2018-model Silent Adrenaline Climbing Treestand. Doc. 1. The defendants have moved for summary judgment. Doc. 31. For the following reasons, the defendants' motion for summary judgment (Doc. 31) is **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND[1]

On October 12, 2020, Jones was injured after falling from the 2018-model Silent Adrenaline Climbing Treestand ("the treestand ") produced and distributed by Alliance

---

[1] Unless otherwise stated, the facts are undisputed and are viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Outdoor Products.[2]  Doc. 31-1 ¶¶ 1, 143.  Jones claims his injuries were caused by design defects, negligent manufacturing, and failure to warn.  Doc. 1.

### A. The Treestand

The treestand has two components—a lower platform and an upper climbing seat.  Docs. 31-1 ¶ 4; 44-2 ¶ 4.  The treestand's two-component design allows a hunter to climb up a tree with the treestand's assistance and hunt from an elevated position.  Docs. 31-1 ¶¶ 3-4; 44-2 ¶¶ 3-4.  The treestand utilizes "a cable attachment system developed by [AOP]" to attach itself to a tree.  Docs. 31-1 ¶ 9; 44-2 ¶ 9.  The cable attachment system is made up of a steel wire that is "encased in a plastic sheath."  Docs. 31-1 ¶ 19; 44-2 ¶ 19.  The cable attachment is "inserted into tubes on each side" of the upper and lower platforms and fixed to the treestand with various bolts, including a "spring bolt" that allows the hunter to adjust the length of the cable attachment depending on the size of the tree.  Docs. 31-1 ¶ 22; 44-2 ¶ 22. According to Jones, when the treestand is assembled, the steel wire is completely hidden from sight by the plastic sheath.  Doc. 31-4 at 33 (131:15-29), 42 (165:14-166:3).

Because a hunter using the treestand is suspended in the air, the treestand comes with a "full body safety harness, which attaches around the hunter's arms, torso, and legs and anchors through a tether to the tree in the event of a fall."  Docs. 31-1 ¶ 5; 44-2 ¶ 5.  When purchased, the treestand comes with "written warning and instructions and a safety video demonstrating the safe use of the system."  Docs. 31-1 ¶ 6; 44-2 ¶ 6.

---

[2] Jones does not dispute AOG's argument that it did not design, manufacture, or sell the tree stand and he presents no argument that AOG is responsible for the alleged defects in the treestand.  *Compare* Doc. 31-2 at 1 *with* Doc. 44.  Therefore, AOG's motion for summary judgment is **GRANTED**, and it is **DISMISSED** from this action.

**B. Jones' Use of the Treestand**

Jones has been hunting for approximately 20 years. Docs. 31-1 ¶ 77; 44-2 ¶ 77. He began using treestands when he was 15 years old and has owned at least one climbing treestand before he bought the treestand in question. Docs. 31-1 ¶¶ 78-79; 44-2 ¶¶ 78-79. Jones bought the treestand on August 28, 2018 from a seller on Amazon. Doc. 31-4 at 16 (63:7-5). According to Jones, the treestand arrived fully assembled. Doc. 44-3 ¶ 4. When Jones received the treestand, he testified that he read the instructions and warnings, but did not watch the safety video. Docs. 31-1 ¶¶ 122-24; 44-2 ¶¶ 122-24. Jones testified that he used the treestand "approximately a handful of times" from 2018 until his 2020 fall. Docs. 31-1 ¶ 128; 31-4 at 20 (80:23-24); 44-2 ¶ 128.

In his declaration, Jones stated that he "always conducted a visual inspection of the treestand before use." Doc. 44-3 ¶ 8. According to Jones, he "specifically looked for signs of corrosion and other damage[,]" and he "never saw signs or indications" of corrosion. *Id.* ¶¶ 8-9. Jones also testified that he never left the treestand outside overnight and that he never used the treestand in the rain. Docs. 31-4 at 14 (55:1-4), 22 (88:6-7), 85; 44-3 ¶ 16. Rather, Jones stated that he kept the treestand in the bed of his truck during hunting season, and he hung it on a wall in his garage for the remainder of the year.[3] Doc. 31-4 at 15 (57:13-58:20). Jones admitted that he never used a harness while hunting with the treestand. Docs. 31-1 ¶ 132; 44-2 ¶ 132.

---

[3] According to Jones, he only used the truck for hunting and parked the truck in the garage when he was not hunting. Doc. 31-1 at 14.

## C. The Incident

On October 12, 2020, Jones went hunting with the treestand. Docs. 31-1 ¶¶ 134-35; 44-2 ¶¶ 134-35. He connected the treestand to a tree and, without using a harness, he climbed twenty to twenty-five feet up the tree. Doc. 31-1 ¶ 135; 44-2 ¶ 135. To climb the tree, Jones testified that he first placed the upper platform at eye level and the lower platform under it. Doc. 31-4 at 23 (90:8-9). Then, he placed his feet into stirrups on the lower platform and moved so that he was positioned inside the middle of the upper platform. *Id* at 23 (90:11-91:6-10). From there, he rested on the upper platform, pulled the bottom platform up with his feet, and then adjusted the top. *Id.* at 92:18-24. He repeated that process until he reached his desired height. *Id.* After Jones reached his desired height, he adjusted the platforms and began shifting his weight to the upper seat platform. Docs. 31-1 ¶¶ 137-38; 44-2 ¶¶ 137-38. Jones testified that as he sat on the edge of the upper platform, he "heard a snapping sound and the cable…portion of the treestand separated." Docs. 31-1 ¶¶ 139-40; 44-2 ¶¶ 139-40. Jones fell to the ground and was injured. Docs. 31-1 ¶ 143; 44-2 ¶ 143. There is undisputed evidence that the treestand fell after the steel wire inside the upper seat's cable attachment system snapped. Docs. 31-1 ¶ 140; 44-2 ¶ 140.

## D. Procedural Background

Jones filed this action on October 4, 2022.[4] Doc.1. Jones' complaint alleges three claims: (1) a strict liability claim for the defective design of the treestand ; (2) negligence based on a design defect and negligent manufacturing; and (3) failure to

---

[4] The case was stayed from July 2023 until April 2024 pending the resolution of the defendants' voluntary bankruptcy petition. *See* Docs. 24; 25.

warn. *Id.* ¶¶ 23-45. The defendants moved for summary judgment on all three counts on February 3, 2025. Soc. 31.

## II.  STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party." Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991)); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the nonmoving party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" Four Parcels of Real Prop., 941 F.2d at 1437-38 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" Id. (quoting Celotex, 477 U.S. at 324) (alterations in original). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." Id.

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1315 (11th Cir. 2011) (citing Celotex, 477 U.S. at 324).  The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact."  Id. (quoting Anderson, 477 U.S. at 249-50).  Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion.  Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it 'must support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial.'  In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party."  United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (emphasis and alterations in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)) (other citation omitted). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

### III.  DISCUSSION

In its initial brief, AOP structured most of its arguments around the question of why the cable failed. Doc. 31-2. That was understandable—discovery and expert analysis focused on whether the cable was zinc galvanized to prevent corrosion. But in his response to AOP's motion for summary judgment, Jones abandoned any metallurgical theory of defect, including whether the cable had been galvanized, properly or otherwise.[5]  Doc. 44.  His sole theory is that the treestand was defectively designed because the steel wire inside the cable attachment is hidden from view and prevents proper inspection. *Id.*

Shifting gears, AOP now argues that Jones cannot demonstrate a design defect and that his failure to wear a harness bars his claim.  Docs. 31-2 at 4-18; 48 at 2-5.  AOP also argues that Jones has not provided sufficient evidence for his punitive damages claim.  Doc. 31-2 at 19-20.  The Court concludes that summary judgment is improper on Jones' design defect claim and AOP's assumption of the risk and misuse defenses.  However, AOP is entitled to summary judgment on Jones' punitive damages claim and any remaining claims.[6]

---

[5] Accordingly, it appears that the parties' motions in limine are moot and they will be terminated unless the parties supplement their motions within 14 days to identify any remaining issues.

[6] In his complaint, Jones asserted claims for negligent manufacturing and failure to warn.  Doc. 1 ¶¶ 32-45.  AOP moves for summary judgment on those claims.  Doc. 31 at 2.  Jones failed to respond to AOP's arguments or cite evidence supporting those claims and has, thus, abandoned them.  *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (("Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")(citing *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990)).  Accordingly, AOP's motion for summary judgment on Jones' negligent manufacturing and failure to warn claims is **GRANTED**.

### A. Defective Design claim

AOP argues it is entitled to summary judgment on Jones' design defect claim because Jones failed to provide evidence of a design defect.[7]  Doc. 31-2 at 11-14.  The Court disagrees.

"To prove a design defect claim in Georgia, a plaintiff must show (1) that the product is defective in its design, and (2) that the design defect caused the plaintiff's injuries."[8]  *Bailey v. B. Braum*, 2021 WL 5037619 at *11 (N.D. Ga Sept. 3, 2021).  A design is defective if "the risks inherent in a product design [outweigh] the utility or benefit derived from the product."  *Dean v. Toyota Indus. Equip. Mfg., Inc.*, 246 Ga. App. 255, 259, 540 S.E.2d 233, 237 (2000).  The risk-utility test requires courts to consider the following factors: availability of an alternative safer design, cost trade-offs, tactical market decisions, product development, research/testing demands (technological feasibility), varying corporate management styles, and regulatory restrictions.  *Banks v. ICI Americas*, 264 Ga. 732, 734-36, 450 S.E.2d 671, 673-75.  "[O]rdinarily, the question of whether a particular design is defective and could thus cause injury is for the jury."  *Long mfg., N.C., Inc. v. Grady Tractor Co.*, 140 Ga. App. 320, 321, 231 S.E.2d 105, 107 (1976).  Therefore, summary judgment on a design defect claim is appropriate only if the defendant can show that, by applying the risk-utility test, the lack of a defect is "plain and indisputable."  *Raymond v. Amada, Co.*, 925

---

[7] AOP suggests in a footnote that Jones' negligent design and strict liability design defect claims should be merged for trial.  Doc. 31-2 at 3.  Jones does not respond to that suggestion.  That is an issue that can be resolved at the pre-trial conference.

[8] AOP makes causation arguments related to alleged defects regarding insufficient quality control and incomplete blueprints of the treestand.  Docs. 31-2 at 12; 48 at 5-6.  Because Jones has abandoned those theories, the Court need not address those arguments.  AOP also argues that it was Jones' failure to wear a harness, not the hidden design defect, that caused Jones' injuries.  Doc. 31-2 at 17-19.  That argument is addressed below.

F. Supp. 1572, 1578 (N.D. Ga.1996 ) (citing first *McGinnis v. Sunbelt Western Steers, Inc.*, 173 Ga. App. 270, 270-71, 327 S.E.2d 3 (1985); and then *Manheim Servs. Corp. v. Connell*, 153 Ga. App. 533, 4-5, 265 S.E.2d 862, 863 (1980)); *See also Dean v. Toyota Industrial Equipment Mfg., Inc.*, 246 Ga. App. 225, 259, 540 S.E.2d 233, 237 (2000) ("Georgia has actually increased the burden of a defendant, in seeking judgment as a matter of law, to show plainly and undisputedly an absence of any evidence that a product as designed is defective.").

Jones contends the treestand's cable assembly was defectively designed because the steel wire that caused the treestand to break was hidden by plastic sheathing and, thus, corrosion could go undetected even with regular inspections which, according to AOP, consumers must make. Doc. 44 at 1. Jones testified that he did not know the steel wire existed because "it was wrapped in…a black plastic coating all the way around it." Doc. 31-4 at 33 (131:15-20). Jones cites photos and diagrams of the treestand and his expert's statement to support his testimony that the cable assembly was defectively designed. Docs. 31-3 at 5, 9-15; 44 at 11-14; 44-4. Specifically, Jones' expert, Bill Munsell, testified that the treestand has a "sheath covering up the ends of the cable on both ends of the assembly." Doc. 32-7 at 36 (136:7-7). Jones argues that the hidden steel wire is a design defect because there is undisputed evidence that even properly galvanized metal should be regularly inspected to prevent corrosion over time. Docs. 44 at 12-13; 44-6 at 36. Jones has, thus, presented evidence that could allow a reasonable jury to find that the cable assembly's design is defective.

AOP argues that "contrary to plaintiff's claim, the cable assemblies could be inspected as plaintiff's expert conceded this point during [his] deposition." Doc. 48 at 3.

But Munsell did not concede that the steel wire was visible during an inspection or that Jones had reason to know the steel wire existed. He merely testified that a user would have seen the steel wire while *assembling* the product and that after assembly, a user could easily inspect the steel wire by removing a bolt. Doc. 32-7 at 37. However, according to the treestand's safety manual, "THIS PRODUCT COMES FULLY ASSEMBLED," and Jones stated that his treestand came fully assembled. Docs. 31-3 at 9; 44-3 ¶ 5. Thus, a jury could still find that a consumer could purchase and use the treestand without knowing that the cable assembly contained a hidden steel wire subject to corrosion. AOP has failed to point to "plain and undisputable evidence" that there is no design defect.

Accordingly, AOP's motion for summary judgment on Jones' design defect claim is **DENIED**.

### B. AOP's Defenses.

AOP asserts two defenses: assumption of the risk and misuse. Docs. 31-2 at 15-19. Both defenses rest on Jones' failure to wear a safety harness. *Id.* Jones admits that he used the treestand without a harness, but he argues there is an issue of fact regarding both defenses. Doc. 44 at 15-17. The Court agrees.

In Georgia, assumption of the risk bars a plaintiff's recovery when the defendant establishes (1) that the plaintiff had full knowledge of the danger associated with his action, (2) that he understood and appreciated the risks of the danger, and (3) that he voluntarily chose to act without coercion. *Johnson St. Props., LLC v. Clure*, 302 Ga. 51, 57, 805 S.E.2d 60, 67 (2017). "As a general rule, whether a party assumed the risk of his injury is an issue for the jury that should not be decided by summary judgment unless the defense is conclusively established by plain, palpable and undisputed

evidence." *Worth v. First Key Homes, LLC*, 367 Ga. App. 762, 764, 888 S.E.2d 360, 362 (2023) (quoting *Watson v. Regional First Care*, 355 Ga. App. 740, 741, 782 S.E.2d 822 (2016)). Similarly, the misuse of a product bars a plaintiff's claim against a manufacturer if the misuse is the "sole proximate cause" of the injury or if "it is the intervening or superseding cause." *Thornton v. E.I. Du Pont De Nemours & Co., Inc.*, 22 F.3d 284, 288 (11th Cir. 1994).

Here, there are issues of fact on both AOP's assumption of risk and misuse defenses. First, while AOP has provided evidence that Jones knew, generally, that he could fall, general knowledge is not enough to establish assumption of the risk as a matter of law. *See* Docs. 31-1 ¶¶ 82-87; 44-2 ¶¶ 82-87. "[K]nowledge of the risk is the watchword of assumption of risk, and means both actual and subjective knowledge on the plaintiff's part." *Worth*, 367 Ga. App. at 763-4, 888 S.E.2d 360, 362 (quoting *Thompkins v. Gonzales-Nunez*, 355 Ga. App. 144, 146, 843 S.E.2d 39, 42 (2020)). "[T]he plaintiff must have knowledge of 'the specific, particular risk of harm associated with the activity or condition that proximately causes injury." *Id.; See, e.g., Roberts v. Tractor Supply Co. and New Buffalo Corporation,* 2015 WL 11251958 at *3 (N.D. Ga. Dec. 15, 2015) (("In fact, Plaintiff asserts that his deposition statements are an acknowledgment of a 'general risk of falling' rather than the particular risk of the tree stand's collapse. Georgia case law has repeatedly recognized 'general risk of falling' versus knowledge of the specific risk of harm created by a defendant's conduct.")(citing *Hillman v. Carlton Co.*, 240 Ga. App. 432, 434, 522 S.E.2d 681, 683 (1999)). Again, Jones has provided evidence that he did not know the treestand's cable system had a steel wire inside of it. A jury could, therefore, find that Jones was unable to fully

appreciate the specific, particular risk of a hidden wire corroding to the point that it could break.

Regarding misuse, it is undisputed that Jones fell after the steel wire broke. Docs. 31-1 ¶ 140; 44-2 ¶ 140. And, again, Jones has provided evidence by which a jury could find that the steel wire broke because it was hidden from view and Jones was unable to properly inspect it. There is, thus, evidence that the treestand's design could have caused Jones' fall, and the Court cannot say that the sole proximate cause of Jones' injuries was his failure to wear a harness. *See Crews v. Tahsin Industrial Corp. USA*, 2022 WL 1567707 at *4 (11th Cir. 2022) (("[P]roximate cause is generally left to a jury unless it is plain and undisputed.") (citing *S. Bell. Tel. & Tel. Co. v. Dolce*, 178 Ga. App. 174, 176, 342 S.E.2d 497, 498 (1986)).

Nor can the Court say as a matter of law that Jones' failure to wear a harness was a superseding, intervening cause of Jones' injuries. A superseding, intervening act must be unforeseeable. *See Williams v. Grier*, 196 Ga. 327, 337, 26 S.E.2d 698, 704 (1943) ("[I]f the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such as its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken."). Here, there is an issue of fact whether Jones' failure to wear a harness was foreseeable. Jones produced a screenshot from AOP's treestand safety video in which the caption states "research into treestand incidents reveals the majority of injuries and deaths occur because the user was not wearing their full-body fall arrest harness." Doc. 44-14 at 1. Further, two of AOP's experts testified that most injuries related to treestand falls occur

-12-

because the user was not properly using a harness.  Docs. 44-6 at 54; 44-7 at 17.  That is evidence by which a jury could find that AOP could reasonably foresee that Jones would not wear a harness.  *See Tahsin*, 2022 WL 1567707 at *4 ("If the stand was defective, there is a genuine issue as to whether [the manufacturer] could foresee that a hunter would not wear a safety harness.").

Accordingly, AOP's motion for summary judgment on its assumption of risk and misuse defenses is **DENIED.**

### C. Punitive Damages

Finally, AOP argues it is entitled to summary judgment on Jones' punitive damages claim.  Docs. 31-2 at 19-21; 48 at 9-10.  Jones argues that AOP is not entitled to summary judgment because a jury could find that AOP acted with "conscious indifference to consequences" of the treestand's design defect.  Doc. 44 at 19.  The Court disagrees.

Punitive damages are available in "tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 15-12-5.1. "Negligence, even gross negligence, is inadequate to support a punitive damage award."  *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 118 (1988).

Jones points to no evidence that AOP was consciously indifferent to any risks related to the treestand's alleged hidden design defect.  As evidence of AOP's conscious indifference, Jones cites an earlier recall of a 2017 treestand produced by

AOP.[9]  Doc. 44 at 18-19.  However, Jones fails to provide evidence that the 2017 recall was due to the same hidden design defect he claims caused his injuries in the 2018 model treestand.  Jones cites only the testimony of Dr. Pierce FollansbeeDelong, a former national sales manager for the defendants, who stated that AOP "decided to do a recall based on consumer misuse" because of "high corrosion and failure to follow the warning labels and leaving the products outside for extended periods of time."[10]  Doc. 44-8 at 25.  But evidence that a different product was recalled for a different reason is not evidence that AOP was consciously indifferent to the alleged hidden design defect.[11]

Jones also argues that AOP was consciously indifferent because it never "conducted any testing to determine how the subject treestand model would perform in anticipated usage."  Doc. 44 at 18.   However, there is unrefuted evidence that the Silent Adrenaline 2018 model treestand underwent independent third-party testing and was certified as meeting industry standards.  Docs. 31-1 ¶¶ 30-31, 161-162; 44-2 ¶¶ 30-31, 161-162.  And "as a general rule, punitive damages are 'improper where a defendant has adhered' to the relevant safety regulations and industry standards." *Hernandez v. Crown Equipment Corp.*, 92 F. Supp. 3d 1325, 1356 (M.D. Ga. March 11,

---

[9] Jones admits that his treestand "was not part of the recall."  Doc. 44 at 6.

[10] The Court questions whether evidence of the recall of one product is admissible to establish that AOP was consciously indifferent to a design defect in a different product.  See *Harley-Davidson Motor Co v. Daniel*, 244 Ga. 284, 286, 260 S.E.2d 20, 22 (1979) ("The recall letter is admissible as long as there is first introduced some independent proof that the particular product in question suffered from the same defect.  The recall letter alone is insufficient to create a jury issue of the presence of such a defect in the product."); see also *Meade v. Ford Motor Co.*, 2011 WL 4402539 at *3 (N.D. Ga. Sept. 20, 2011) ("These reports are similar to recall letters in that they generally discuss problems with a product but do not discuss the plaintiff's particular product; these recall letters have been held inadmissible in the absence of independent proof that the Plaintiff's product suffers from the same defect.").

[11] Dr. FollansbeeDelong also testified that "in 2018 [AOP] had a completely different manufacturer make the product altogether."  Doc. 44-8 at 25.

2015) (quoting *Stone Man, Inc. v. Green*, 263 Ga. 470, 472 (1993)); *see also Welch v. General Motors Corp*, 949 F. Supp. 843, 845 (N.D. Ga. 1996) ("And even assuming *arguendo* that an issue of fact existed as to compliance with federal regulations, this would not necessarily create an issue of fact on the issue of punitive damages—especially where, as here, defendant believed it was complying with the regulations.").

In sum, Jones has failed to provide evidence that AOP consciously disregarded any known risks of injuries to its consumers. Accordingly, AOP's motion for summary judgment on Jones' claim for punitive damages is **GRANTED**.

## IV.  CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment (Doc. 31) is **GRANTED** in part and **DENIED** in part. AOP's motion for summary judgment is **GRANTED** as to Jones' failure to warn, negligent manufacturing, and punitive damages claim. AOP's motion for summary judgment is **DENIED** as to Jones' design defect claim and AOP's assumption of the risk and misuse defenses. AOG's motion for summary judgment is **GRANTED** in all other respects, and AOG is **DISMISSED** from this action.

**SO ORDERED**, this 12th day of June, 2025.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT